IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

ASSOCIATION CASUALTY INSURANCE COMPANY;
BENCHMARK INSURANCE COMPANY; GEORGIA
CASUALTY & SURETY COMPANY; and NATIONAL
SECURITYFIRE and CASUALTY COMPANY                    PLAINTIFFS

VERSUS                                    CIVIL ACTION NO. 3:07cv525KS-JCS

ALLSTATE INSURANCE COMPANY; FARM BUREAU
MUTUAL INSURANCE COMPANY; NATIONWIDE MUTUAL
FIRE INSURANCE COMPANY d/b/a NATIONWIDE
INSURANCE COMPANIES; STATE FARM FIRE AND
CASUALTY COMPANY; ST. PAUL TRAVELERS COMPANIES;
LORRIE K. BROUSE; ROBERT P. ARNOLD; DELMA P. LOCKE, JR.;
TERRY BLALOCK; CHARLES RICE; and BRAD LITTLE          DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the court on a Motion for Summary Judgment on Immunity Defense **[#188]** filed on behalf of the defendants Allstate Insurance Company, Nationwide Insurance Companies, State Farm Fire and Casualty Company, Lorrie Brouse, Delma P. Locke, Jr., Terry Blalock, and Charles Rice (collectively, "Defendants") pursuant to Rule 56 of the Federal Rules of Civil Procedure. All of the remaining defendants have filed endorsements adopting this motion. The court, having reviewed the motion, the response, the briefs of counsel, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the motion is not well taken and should be denied. The court specifically finds as follows:

**FACTUAL BACKGROUND**

This case involves allegations by four insurer members[1] ("the plaintiffs") of the Mississippi Windstorm Underwriter's Association ("the Association" or "the MWUA") that five large private insurance companies ("insurer defendants") and certain named representatives ("individual defendants"), operating as the Board of Directors of the MWUA intentionally or negligently failed to procure reasonable and appropriate reinsurance for the Association because of a conflict of interest. The plaintiffs are ultimately seeking certification as class representatives on behalf of a class alleged to be more than one hundred non-defendant insurer members of the Association.

The Complaint alleges that the defendants' actions constituted negligence and breach of their fiduciary duty towards all members of the proposed Class, which caused the proposed Class unreinsured losses up to approximately $525 million. The overarching loss allegation is calculated by the plaintiffs as the difference between (1) the approximately $700 million in claims that the Association is estimated to pay to its insureds as a result of property damage claims arising out of Hurricane Katrina, and (2) the $175 million in reinsurance actually procured by the MWUA Board on behalf of the Association for the 2004 and 2005 hurricane seasons. The facts dealing with the formation and operation of the MWUA have been exhaustively discussed in a previous opinion of the court, **[#132]**, and will only be repeated herein as necessary in the disposition of the present motion.

---

[1] There were originally five plaintiffs. Aegis Security Insurance Company filed a Rule 41 voluntary dismissal on April 20, 2007.

**THE MISSISSIPPI WINDSTORM UNDERWRITING ASSOCIATION**

The Mississippi Windstorm Underwriting Association is a creature of the Mississippi Legislature, which acted "to provide a mandatory program to assure an adequate market for windstorm and hail insurance in the coast area of Mississippi." 1987 Miss. Laws, ch. 459, § 1. The MWUA is euphemistically referred to as the "windpool." In creating the MWUA, the Legislature made the following finding of public necessity:

> The Legislature of the State of Mississippi hereby declares that an adequate market for windstorm and hail insurance is necessary to the economic welfare of the State of Mississippi and that without such insurance the orderly growth and development of the State of Mississippi will be severely impeded; that furthermore, adequate insurance upon property in the coast area is necessary; and that while the need for such insurance is increasing, the market for such insurance is not adequate and is likely to become less adequate in the future.

*Id.* As the defendants point out, for almost two decades, in accordance with its legislative purpose, the Association has made windstorm and hail insurance available to residents of the coastal counties of Mississippi who otherwise would not have been able to get such insurance in the normal insurance market.

The MWUA is composed of all insurers who write property insurance on a direct basis anywhere in Mississippi. Miss. Code Ann. § 83-34-3 (2006). Insurers are required by statute to participate in the MWUA as a condition of transacting insurance anywhere in the state. *Id.* All members of the Association participate in the MWUA's writings, expenses, profits, and losses in the proportion that the net direct premiums written by each such member bears to the aggregate net premiums written in the state by all members of the Association. *Id.*, § 83-34-9. Each member, however, receives a

3

credit for windstorm and hail insurance it voluntarily writes in the coast area which results in a reduction of the writing member's total responsibility for general windpool losses. This is to encourage insurers to write such insurance. *Id.*

The formation statute required the Association, within forty-five days after the date of passage, to submit a proposed plan of operation for review and approval by the Commissioner. Miss. Code Ann. § 83-34-13 (2006). With the Commissioner's approval, the Association adopted a Plan of Operation ("Plan") and Articles of Agreement, effective October 1, 1987. By statute, the power to amend or modify the Plan remains solely in the discretion of the Commissioner. Miss. Code Ann. § 83-34-13 (2006).

The Mississippi State Rating Bureau manages the day-to-day operations of the Association. The Plan, however, vests the administration of the business affairs and activities of the Association with its Board of Directors, subject to review by the Commissioner. Plan, § XI(1). The Board consists of five representatives of the member companies of the Association and three licensed Mississippi agents from the coast area, all of whom are appointed annually by the Commissioner. Miss. Code Ann. § 83-34-7 (2006); Plan, § XI(2). The Commissioner also appoints a member of his own staff to serve as a nonvoting Board member. Plan, § XII(10). The Board is empowered by the Plan to perform all duties necessary or incidental to the administration of the Plan, including the statutory discretion to "purchase reinsurance in [sic] behalf of [MWUA's] members." Miss. Code Ann. § 83-34-5 (2006); Plan, § IX(1), XIII(2).

The five insurer defendants and their representatives, some of whom are individual defendants, were the appointed members and Board of the MWUA at all

times complained of.

The statute authorizes the Commissioner, in his discretion, to examine the affairs of the Association and require the Association, "at any time," to furnish him with additional information with respect to "any other matter which the Commissioner deems to be material to assist him in evaluating the operation and experience of the association." Miss. Code Ann. §§ 83-34-25, 27 (2006). Furthermore, under the Plan, the Board must also submit an annual written financial report to the Commissioner. Plan, § XIII(3). All decisions of the Association are subject to formal review by the Commissioner under the statutory appeals provision. The statute provides that "[a]ny person . . . or any affected insurer who may be aggrieved by an act, ruling or decision of the association" may, within thirty days after such ruling, appeal to the Commissioner. Miss. Code Ann. § 83-34-19 (2006). Orders of the Commissioner, in turn, are subject to judicial review. *Id*.

## **ALLEGATIONS OF THE COMPLAINT**

The plaintiffs allege that, due to the mechanism under the Plan for distribution of expenses and losses among MWUA's member companies, the Individual Defendants, as members of MWUA's Board, "did not purchase adequate and reasonable reinsurance." They allege that the Board dismissed at least three of four companies which provided risk analysis concerning the purchase of reinsurance, and then ignored the advice of the fourth to purchase enough reinsurance to cover a 500 year catastrophe. The Board instead purchased $175,000,000 dollars of reinsurance which they contend covered a 250 year event versus the recommendation to purchase

$283,000,000 to cover a 500 year event. The plaintiffs contend that the Board actually only purchased enough reinsurance to cover a 100 year event. This conflict is not relevant to the motion to dismiss but will certainly prove relevant in any assessment of damages, if necessary.

The plaintiffs contend that the defendants were responsible for fifty percent of all expenses of the Association, including premiums for the purchase of reinsurance, by virtue of their net sales. This made them liable for fifty percent of the first ten percent of unreinsured losses. However, because of the volume of Essential Property Insurance these defendants wrote in the coast area, they were responsible for little if any of the remaining ninety percent of unreinsured losses. Thus, as a result of the defendants' actions, the plaintiffs claim that their pro rata share of unreinsured losses for the 2005 hurricane season "greatly increased" to the point that they are liable for nearly ninety percent of unreinsured losses. The plaintiffs allege that the defendants had the incentive to keep expenses low as they (the defendants) were disproportionately liable for these expenses versus keeping adequate levels of reinsurance, the absence of which, greatly increased the exposure of the plaintiffs to catastrophic losses.

The defendants assert that the plaintiffs do not allege any wrongdoing by the insurer defendants, except that "Insurer Defendants stood to gain by under-reinsuring the MWUA's risk." They argue that the plaintiffs' claim of liability as to them results from the alleged liability of the insurer defendants based on the liability of the individual defendants under the doctrine of *respondeat superior*. The plaintiffs assert that the insurer defendants are directly liable as board members by virtue of their appointments by the Commissioner. They acknowledge that the insurer defendants acted through

6

their employees, who were designated to act on their behalf. The plaintiffs also assert common law claims for damages under theories of breach of fiduciary duty and negligence. In addition to compensatory damages, the plaintiffs seek punitive damages and a declaration that the defendants are not entitled to indemnification by the Association for any damages paid pursuant to this litigation.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is

not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating

[entitlement to summary judgment]." *John*, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

Because the plaintiffs allege that this court has original jurisdiction of this civil action via complete diversity of the parties under 28 U.S.C §1332(a)(1), Mississippi law

9

is controlling. *Erie R. Co. V. Tompkins*, 304 U.S. 64, 78-80 (1934); *Huss v. Gayden*, 465 F.3d 201, 205-06 (5th Cir. 2006).

## ANALYSIS

In support of their motion the defendants assert that the MWUA is a "governmental entity" within the meaning of the Mississippi Tort Claims Act (MTCA), Miss. Code Ann. §§ 11-46-1, *et seq* and that the members of the Board of Directors were at all times acting in their roles as Directors of the MWUA thus entitling them to sovereign immunity. The defendants further assert that since this action was filed more than one year after the events of which complaint is made, without there having first been a Notice of Intent to Sue as provided by the MTCA, this suit is barred. Finally, the defendants contend that the 2007 amendments to the statutes establishing the MWUA plainly provide that "[t]here shall be no liability on the part of . . . the members of the board . . . ," Miss. Code Ann. § 83-34-23 (Supp. 2007), and that this enactment should be applied retroactively to shield the defendants from suit.

To support their "governmental entity" argument, the defendants contend not that they are a state agency but instead that they are a part of the "State" by virtue of being an "instrumentality" thereof as defined in Miss. Code Ann. § 11-46-1(j). The defendants are correct that if the MWUA is an instrumentality within the meaning of that statute, then the Legislature has granted it immunity from liability.

Section 11-46-1(j) provides:

"State" means the State of Mississippi and any office, department, agency, division, bureau, commission, board, institution, hospital, college, university, airport authority or other instrumentality thereof, whether or not such body or

instrumentality thereof has the authority to levy taxes or to sue or to be sued in its own name.

While the Legislature did not define "agency" or "instrumentality," the defendants contend that the disjunctive nature of the language of this code section makes it apparent that other entities besides agencies fall within the definition of the "State." Further, the defendants recognize that the Mississippi Supreme Court narrowly defined what is a state agency in holding that the judicial branch of state government is not a "state agency." *In re Miss. Judicial Info. Sys*, 533 So. 2d 1110, 1111 (Miss. 1988). The defendants argue that nonetheless, the judicial branch is unquestionably part of the State and for that reason, the Legislature expressly exempted "legislative or judicial action or inaction" from liability under the MTCA. Miss. Code Ann. § 11-46-9(1)(a) (Supp. 2007), and thus, by analogy, the MWUA is within the definition of "State."

In construing the MTCA according to Mississippi law, "words which have no statutory definitions are to be assigned their ordinary and customary meanings." *Jones v. Miss. Dept. of Transp.*, 744 So.2d 256, 259 (Miss. 1999). Applying this principle, the Supreme Court has said:

> An instrumentality is defined as "something that serves as an intermediary or agent through which one or more functions of a controlling force are carried out: a part, organ, or subsidiary branch esp. of a governing body." Webster's Third New International Dictionary 1172 (3rd Ed. 1986).

*Bolivar Leflore Med. Alliance, LLP, v. Williams,* 938 So. 2d 1222, 1228 (Miss. 2006).

The defendants further argue that the enabling statute which created the MWUA clearly manifests the concept that it is a "tool" or "instrumentality" of the State. That section provides the purpose of the act creating the MWUA is "to provide a mandatory program to assure an adequate market for windstorm and hail insurance in the coast

11

area of Mississippi." 1987 Miss. Gen. Laws ch. 459, § 1.

The MWUA is a private partnership governed by a Plan of Operations and Articles of Agreement. It is financed entirely by premiums paid by policyholders and by assessments to its members. Each member of the MWUA participates in the MWUA's writings, expenses, profits and losses. according to a formula set forth in the Plan. There is no questioning the fact that the MWUA is an entity whose funds are not part of the public treasury. However, the defendants correctly point out that even a private organization may serve a public function. *Mississippi Surplus Lines Association v. Mississippi*, 261 Fed. Appx. 781, 2008 WL 152462 (5th Cir. 2008).

Mississippi Surplus Lines Association ("MSLA"), described as "a private, non-profit corporation working at the behest of the Mississippi Insurance Commissioner," *id*., at 782, sued the state after the Legislature confiscated $2 million collected by MSLA as fees levied pursuant to statute. Thus, the defendants contend that although MSLA's status as a private entity was not contested nor was its tort liability considered by the Fifth Circuit, the Court's finding its funds to be public money demonstrates that even a private corporation may have governmental characteristics that are of controlling significance in some circumstances.

Therefore, according to the defendants, the MWUA falls within the statutory definition of "state" as an "instrumentality" of state government because the legislative purpose of the MWUA leaves no doubt that the Association was created as a matter of public necessity, without which "the orderly growth and development of the State of Mississippi will be severely impeded." *See* 1987 Miss. Laws, ch. 459, § 1. The defendants continue that in accordance with its legislative directive and its Plan of

Operation, as approved by the Commissioner, Miss. Code Ann. § 83-34-13 (Rev. 1999), the MWUA offers a government-mandated public benefit to homeowners who otherwise would not be able to purchase essential property insurance in the normal market. The public benefit being that absent the MWUA program, fulfillment of the public purpose of the Act presumably would require either taxpayer-subsidized insurance or taxpayer-subsidized disaster relief after the fact.

Indeed, Section 1 of the Plan declares that MWUA exists "to fulfill the Purposes provided by the Mississippi Legislature" and to require each member insurer "to meet its public responsibility." In addition, the Commissioner must approve any rules and regulations adopted by the MWUA, Miss. Code Ann. § 83-34-29 (Rev. 1999), and he may review and revise on appeal any "act, ruling or decision of the Association," Miss. Code Ann. § 83-34-19 (Rev. 1999). Thus, the defendant urges the court to conclude that the MWUA is entitled to tort immunity because the MWUA carries out a public function and is subject to the ultimate control of the Commissioner, thereby making it an instrumentality of the state and qualifying it as a governmental entity under § 11-46-1(g).

The plaintiffs argue to the contrary and point to a recent ruling of the Mississippi Supreme Court which recently held that a virtually identical mandatory insurance pool created by Mississippi statute—the Mississippi Insurance Guaranty Association (.MIGA.)—is not a state agency. *Owens Corning v. Mississippi Insurance Guaranty Association*, 947 So. 2d 944 (Miss. 2007). To support this argument, the plaintiffs point out that the Commissioner appoints or must approve member-selected MIGA board members (Miss. Code Ann. § 83-23-113), the MIGA Plan of Operation is effective only

13

upon written approval of the Commissioner (§ 83-23-117), the Commissioner may intervene in MIGA affairs (§ 83-23-119), MIGA is subject to examination and regulation by the Commissioner (§83-23-127), and the MIGA board must submit an annual financial report to the Commissioner (§83-23-127).

The defendants distinguish *Owens Corning v MIGA* by arguing that the Court did not consider MIGA's entitlement to protection under the MCTA at all, but only held that MIGA is not a state agency whose "interpretation of the Insurance Guaranty Act is not entitled to deference." *Id.* at 946. Contrary to the defendants' assertions, the court finds *Owens Corning* persuasive for the proposition that the MWUA is likewise not a state agency or instrumentality of the state. The formative statutes for MIGA and the MWUA are very similar and require similar conduct on the part of the Insurance Commissioner. For whatever reason the Court did not address the issue of the MTCA and immunity in *Owens Corning*. It did, however, state pointedly that MIGA was not an agency of the state.

More to the point is *Texas Catastrophe Property Insurance Association v. Morales*, 975 F.2d 1178 (5th Cir. 1992) in which the Fifth Circuit found an insurance pool similar to the MWUA to be a private entity, rather than a governmental entity. The Texas Legislature had by statute unequivocally declared CATPOOL to be a state agency. *Id.* at 1180. The Fifth Circuit found that persons have a constitutional right to representation by counsel, *id.* at 1181, and proceeded to consider whether Texas could require CATPOOL to be represented by its Attorney General. Of distinction to the defendants, the question, as the Fifth Circuit saw it, was not "whether CATPOOL is a

14

'state agency,'" but "whether CATPOOL was part of the state." *Id.* CATPOOL was composed of private insurers, thus the Court held that Texas "cannot prevent private insurers from protecting their own money with retained counsel of their choice." *Id.* at 1183. The defendants contend that the Fifth Circuit did not consider the question presented here, whether a state could aid private insurers in "protecting their own money" by conferring sovereign immunity upon their association. The court concludes, if that is the dispositive question, then the defendants indeed argue for an anomaly.

The court finds that the language used in CATPOOL which held that it was not a part of the state is controlling here. The court held

> If CATPOOL makes a profit, that money does not go to the state. Although some profits are used to purchase reinsurance, the member companies may receive distributions from profits….If losses exceed premiums, the member companies are assessed, not the public treasury. *See id.* When CATPOOL loses, the bank accounts of its members are depleted, not the public treasury….When CATPOOL wins, the bank accounts of its members may be augmented, not the public treasury.

*Id.* at 1182. Likewise, the MWUA uses a large portion of the funds it receives from premiums for reinsurance purchases. Beyond that, if the MWUA makes a profit, that money goes to MWUA members, not the State of Mississippi. If the MWUA loses money or suffers a catastrophic loss, as occurred in the present case, the money to cover those loses comes from the members, not from the State. The mere fact that the State of Mississippi created the MWUA by statute and coerces insurers to participate in the MWUA does not mean that the MWUA is part of the State of Mississippi.

Indeed, the Fifth Circuit explained as follows:

That the state holds, and exercises, the coercive power to force private insurers…to cover certain risks does not mean that the money coming out of the companies' bank accounts is state money. It is private money directed to pay

15

> private claims....The act creating [such an insurance pool] is not .a grant of political power,' as in the case of a municipality or other political subdivision; [the pool] is not .employed in the administration of the government..

Id. at 1182-83.

Likewise, even though Mississippi law compels private insurers to participate in the MWUA, the premiums collected by the MWUA are used to cover private expenses and private risks. Moreover, like the Texas association, MWUA shortfalls are assessed from member companies and their private funds. Thus, the MWUA – like MIGA and like the Texas pool addressed in *Morales* – is a private organization administering private funds. It is not an arm of the state, and its directors are not entitled to immunity as though they were state employees.

As an alternative basis for their motion, the defendants argue that a 2007 amendment to the Mississippi Code made MWUA Board members immune from suit. *See* Miss. Code Ann. § 83-34-23 (Supp. 2007). In 2007 the Legislature substantially changed the statute governing MWUA from beginning to end by its adoption of the Mississippi Economic Growth and Redevelopment Act of 2007. 2007 Miss. Laws, Ch. 425. Section 19 of that statute amended Miss. Code Ann. § 83-34-23 (Supp. 2007) to read as follows:

> There shall be no liability on the part of the insurance commissioner or any of his staff and representatives for any action taken under and pursuant to the provisions of this chapter. There shall be no liability on the part of the association, its agents, representatives or employees, the members of the board, or any assessable insurer of the association, except for the contractual obligations of any contract of insurance and the duty to pay assessments as provided in this chapter.

Insurers, formerly known as members, are now called "assessable insurers," which the amended act defines to mean "each and every insurer authorized to write,

and engaged in writing, property insurance within this state on a direct basis." Miss. Code Ann. § 83-34-1(n) (Supp. 2007).

The claims in this case arise as a result of actions taken in 2004 and 2005 and losses that accrued by late August 2005. The plaintiffs commenced this action in 2006. As such, in order to take any advantage of the 2007 amendments, the defendants would have to establish that those amendments retroactively extinguish the plaintiffs' claims.

The defendants never address the retroactivity issue on its face. Instead, they argue that because the MWUA exists only as a statutory creation, the Legislature is free to amend the rules governing it at any time. They argue that the MWUA could not and would not exist but for the statute, thus, the defendants' duties to plaintiffs and plaintiffs' rights against defendants, if any, derive solely from that statute. Therefore, when that statute changed in 2007, it changed the statutory relations among the parties. This is a specious argument.

Mississippi law concerning retroactive application of statutes is well developed, and it is largely ignored by the defendants. The Mississippi Supreme Court "has continuously followed the rule that statutes will be construed to have a prospective operation only, unless a contrary intention is manifested by the clearest and most positive expression." *Boston v. Hartford Accident and Indemnity Company*, 822 So.2d 239, 245 (Miss. 2002). "A statute will not be construed to be retroactive unless the words admit of no other construction or meaning, and there is a plain declaration in the act that it is." *Id*. Given this basic rule of statutory construction, a statute that is silent on the question of retroactive application is to be enforced prospectively only. And, of

and engaged in writing, property insurance within this state on a direct basis." Miss. Code Ann. § 83-34-1(n) (Supp. 2007).

The claims in this case arise as a result of actions taken in 2004 and 2005 and losses that accrued by late August 2005. The plaintiffs commenced this action in 2006. As such, in order to take any advantage of the 2007 amendments, the defendants would have to establish that those amendments retroactively extinguish the plaintiffs' claims.

The defendants never address the retroactivity issue on its face. Instead, they argue that because the MWUA exists only as a statutory creation, the Legislature is free to amend the rules governing it at any time. They argue that the MWUA could not and would not exist but for the statute, thus, the defendants' duties to plaintiffs and plaintiffs' rights against defendants, if any, derive solely from that statute. Therefore, when that statute changed in 2007, it changed the statutory relations among the parties. This is a specious argument.

Mississippi law concerning retroactive application of statutes is well developed, and it is largely ignored by the defendants. The Mississippi Supreme Court "has continuously followed the rule that statutes will be construed to have a prospective operation only, unless a contrary intention is manifested by the clearest and most positive expression." *Boston v. Hartford Accident and Indemnity Company*, 822 So.2d 239, 245 (Miss. 2002). "A statute will not be construed to be retroactive unless the words admit of no other construction or meaning, and there is a plain declaration in the act that it is." *Id*. Given this basic rule of statutory construction, a statute that is silent on the question of retroactive application is to be enforced prospectively only. And, of

course, if the statutory language mandates that the statute is to apply "from and after passage, it is not to be applied retroactively to causes of action which accrued prior to passage of the statute." *Id.* Thus, in *Jones v. Baptist Mem'l Hosp.*, 735 So.2d 993 (Miss. 1999), the Court refused to give retroactive effect to sovereign immunity provisions that were expressly "effective from and after passage." It therefore declined to apply those provisions to causes of action that have accrued prior to the passage of the statute.

The amended statute upon which the defendants rely is expressly prospective in its application. Section 24 of the Mississippi Economic Growth and Redevelopment Act of 2007, which amended the statute that created the MWUA states that "[t]his act shall take effect and be in force from and after its passage." Given this alone, any suggestion that the 2007 amendments should be construed to extinguish the plaintiffs' pre-existing claims is baseless.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment **[#188]** filed on behalf of the defendants Allstate Insurance Company, Nationwide Insurance Companies, State Farm Fire and Casualty Company, Lorrie Brouse, Delma P. Locke, Jr., Terry Blalock, and Charles Rice and endorsed and adopted by all of the remaining defendants is Denied and that the plaintiffs' alternative motion for time to conduct additional discovery incorporated into their response to the present motion **[#s 214 & 215]** is Denied as moot.

SO ORDERED AND ADJUDGED this the 15th day of July, 2008.

                                            *s/Keith Starrett*
                                            UNITED STATES DISTRICT JUDGE